UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 26-CR-10133-LTS |
| v. | Leave to file granted on October 13, 2026 |
| NICOLO NOURAFCHAN Defendant | (REDACTED COPY) |

**DEFENDANT'S MOTION FOR ISSUANCE OF RULE 17(C) SUBPOENAS DUCES TECUM**

Defendant Nicolo Nourafchan respectfully moves under Fed. R. Crim. P. 17(c) for authorization to issue subpoenas *duces tecum* to [redacted] (Exhibit 1), [redacted] (Exhibit 2), and [redacted] (Exhibit 3), seeking the records identified in their respective Attachments A. The requested materials go directly to the government's theory of the case. They will show what information was contained in the documents Mr. Nourafchan allegedly accessed, whether that information could have supplied the alleged tips, and whether the timing and nature of his access support the government's charged theory. They will also show whether reviewing documents from unassigned matters was unusual or instead consistent with ordinary associate training, research, and drafting practices. Because these issues bear directly on whether Mr. Nourafchan obtained and misused material nonpublic information as alleged, the defense requests production sufficiently in advance of trial to permit meaningful review and preparation.

## I. BACKGROUND

The indictment alleges that Mr. Nourafchan obtained material nonpublic information concerning proposed mergers and acquisitions by accessing confidential documents at [redacted], [redacted], and [redacted], including matters on which he did not work, and then provided that

information to others for trading. Indictment, Dkt. 1, ¶¶ 68-73. The parallel SEC complaint similarly alleges that he searched firm systems and viewed documents in preview or read-only mode, including files relating to transactions on which he was not assigned. *SEC v. Nourafchan et al.*, No. 1:26-cv-12068, Complaint, Dkt. 1, ¶¶ 51, 54 (hereinafter "SEC Complaint").

The prosecution's theory therefore depends not merely on whether Mr. Nourafchan accessed particular files, but on what those files contained at the time, the context and purpose of the access, and the firms' practices concerning associate review of documents outside assigned matters.

At [redacted], for example, the Indictment alleges Mr. Nourafchan accessed documents relating to IPC Healthcare and Neustar. Indictment ¶¶ 78-79. At [redacted], it identifies Innophos, Care.com, and Taubman as matters on which Mr. Nourafchan did not work, while expressly identifying Zagg as "a deal that NOURAFCHAN worked on." *Id.* ¶¶ 92, 94, 96, 99. The SEC further identifies specific Momenta documents, including draft merger agreements, diligence trackers, timelines, signing checklists, board materials, and working-group documents, that Mr. Nourafchan allegedly accessed. SEC Complaint ¶¶ 61, 63, 65, 68. At [redacted], the SEC identifies similar alleged access to documents concerning SailPoint, iRobot, and Momentive. *Id.* ¶¶ 92, 94-95, 116-17, 149-50. In sum, the indictment and SEC complaint allege that Mr. Nourafchan improperly accessed or misappropriated confidential information relating to the following transactions while employed at [redacted], [redacted], and [redacted]. The chart uses the Indictment's designations. The SEC complaint identifies [redacted] as Law Firm A and [redacted] as Law Firm B.

| **Law firm** | **Transaction** | **Year** |
|---|---|---|
| [redacted] **(Law Firm A)** | Acquisition of IPC Healthcare by TeamHealth | 2015 |

| | | |
|---|---|---|
| | Acquisition of Neustar by an investor group including Golden Gate Capital and GIC | 2016 |
| [redacted] **(Law Firm B)** | Acquisition of Innophos by One Rock Capital Partners | 2019 |
| | Acquisition of Care.com by IAC | 2019 |
| | Acquisition of Taubman by Simon Property Group | 2020 |
| | Acquisition of Momenta Pharmaceuticals by Johnson & Johnson | 2020 |
| | Acquisition of ZAGG by an Evercel investor group | 2020 |
| [redacted] **(Law Firm C)** | Acquisition of DSP Group by Synaptics | 2021 |
| | Acquisition of Citrix by Vista Equity Partners and Evergreen Coast Capital | 2022 |
| | Acquisition of SailPoint by Thoma Bravo | 2022 |
| | Proposed acquisition of iRobot by Amazon | 2022 |
| | Acquisition of Poshmark by Naver | 2022 |
| | Acquisition of KnowBe4 by Vista Equity Partners | 2022 |
| | Acquisition of Qualtrics by Silver Lake and CPP Investments | 2023 |
| | Acquisition of Momentive by a Symphony Technology Group-led consortium | 2023 |
| | Acquisition of Berkshire Grey by SoftBank | 2023 |
| | Acquisition of NextGen Healthcare by Thoma Bravo | 2023 |
| | Acquisition of Orchard Therapeutics by Kyowa Kirin | 2023 |

The law firms and the government have produced access logs identifying document titles and, in some instances, aggregate records showing access by Mr. Nourafchan. Those materials do not establish what information particular documents contained when accessed. The production also lacks the underlying documents and complete histories showing which other users accessed the same files, when they did so, and the nature of their activity.

The defense likewise expects contemporaneous training materials and law firm policies to establish that associates were permitted and encouraged to review files from matters on which they were not assigned for training and professional development.

Together, these records will permit the defense to determine what alleged MNPI was available in the accessed documents and whether access outside an assigned matter reflected ordinary professional activity. Accordingly, the requested materials are necessary to refute the

government's inference that such access was undertaken to obtain confidential information for unlawful tipping.

## II. STANDARD FOR ISSUANCE

"Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *United States v. Beckford,* 964 F. Supp. 1010, 1019 (E.D. Va. 1997) (quoting *In re Martin Marietta Corp.,* 856 F.2d 619, 621 (4th Cir. 1988)). Indeed, the Supreme Court has expressly acknowledged that "[t]he right to the production of all evidence at a criminal trial . . . has constitutional dimensions." *United States v. Nixon*, 418 U.S. 683, 711 (1974). The Court explained:

> The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor." Moreover, the Fifth Amendment also guarantees that no person shall be deprived of liberty without due process of law. It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced.

*Id.* To effectuate these fundamental guarantees, Rule 17 permits defendants, like the government, to subpoena evidentiary materials for use in their defense, and district courts have the discretion to order that Rule 17(c) subpoenas be returnable prior to trial. *See id.* at 698-99 (the "chief innovation [of Rule 17(c)] was to expedite trial by providing a time and place before trial for the inspection of subpoenaed materials").

Under *Nixon*, in order to obtain production of subpoenaed documents prior to trial, the moving party must show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that

the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id.* at 699-700 (internal footnote omitted). In short, a party seeking a pre-trial Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700; *see also, e.g., United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988) (referring to "threshold showing of admissibility, relevancy, and specificity").[1]

Ultimately, all that is required is a likelihood that the subpoenaed materials will reveal "relevant evidence, admissible at trial." *LaRouche*, 841 F.2d at 1180. This threshold inquiry simply "requires the Court to assess whether the documents sought have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting Fed. R. Evid. 401). It is not required that the subpoenaed materials actually be introduced into evidence, so long as the motion represents "a good-faith effort . . . to obtain evidence." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *see also United States v. Rajaratnam*, 753 F. Supp. 2d 317, 320 n.1 (S.D.N.Y. 2011) ("[T]he *Bowman Dairy* court interpreted Rule 17 as neither a discovery device to examine documents for whatever might turn up, nor as a mechanism to obtain documents that a defendant can identify in advance, but rather a way for a defendant to examine documents he believes to exist that would be relevant to, and

---

[1] Mr. Nourafchan notes that some courts have suggested that the *Nixon* requirement that the subpoenaed documents be "evidentiary" should not be applied where the Rule 17(c) subpoena is directed to a third party, as opposed to the government. *See, e.g.*, *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008) (holding that the defendant "need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond"); *United States v. Nachamie*, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000) ("[T]he judicial gloss that the material sought must be evidentiary—defined as relevant, admissible and specific—may be inappropriate in the context of a defense subpoena of documents from third parties"). While the defense believes that, for the reasons outlined below, the *Nixon* standard is satisfied here, it alternatively contends that the subpoena should be authorized under the less stringent "material to the defense" standard.

therefore presumptively admissible in, his defense.”).

## III. THE DOCUMENTS AND INFORMATION SOUGHT ARE RELEVANT, SPECIFIC, AND ADMISSIBLE FOR MR. NOURAFCHAN’S DEFENSE

The three subpoena attached as Exhibits 1 ([redacted]), 2 ([redacted]), and 3 ([redacted]), each contain the following six requests:

1. Produce each Accessed Document in the specific version identified as having been accessed by Nourafchan, including any attachments, exhibits, schedules, comments, and tracked changes associated with that version.

2. Produce Access Records for all users who accessed the Accessed Documents or other Documents relating to the Relevant Transaction during the relevant period, including the version accessed, user or account identifier, date and time of access, and type of activity. Also produce records sufficient to identify those users and their positions or roles at the Firm.

3. Produce associate handbooks, training materials, policies, and other instructions addressing whether associates were permitted or encouraged to review documents from matters on which they were not assigned for training, professional development, research, or use as drafting examples.

4. Produce instructions or communications provided to Nourafchan that directed, permitted, encouraged, or restricted his review of client files for any of the purposes described in Request 3.

5. Produce Nourafchan’s Access Records during the Relevant Period for both assigned and unassigned matters, including matters unrelated to the Relevant Transactions.

6. Produce communications between the Firm and the Department of Justice, United States Attorney’s Office, FBI, SEC, or any other investigating agency concerning Nourafchan’s alleged breach of confidentiality, misappropriation, or disclosure of client or deal information, or the investigation of that conduct. This includes emails, texts, letters, memoranda, reports, attachments, and notes or summaries of telephone calls, meetings, or other oral communications, from the first such communication through the date of production.

### 1) The Requested Records are Relevant and Material to the Defense.

Request 1 seeks the actual documents the government claims Mr. Nourafchan accessed before information was allegedly tipped to others. The request is targeted at information those documents contained at the time, *e.g.*, whether those documents identified a counterparty, price,

announcement date, or other MNPI. A file called "merger agreement," for example, does not show what that draft contained. The requested documents will allow the defense to compare their contents with the alleged tips and the timing of the trades.

Requests 2, 3, and 4 address the government's argument that it was improper for Mr. Nourafchan to access matters on which he was not assigned. The defense expects the access records and firm training materials to show that associates regularly reviewed documents from other matters for research, drafting, training, and professional development. If other associates accessed the same types of documents, and firm policies permitted or encouraged that practice, it would show that Mr. Nourafchan's access was not unusual. That would not excuse any improper disclosure, but it would weaken any inference that accessing an unassigned matter was itself evidence of an unlawful purpose.

Request 5 provides context for Mr. Nourafchan's own use of the firms' document systems. The government focuses on access events connected to alleged trading. The defense is entitled to compare those events with his broader pattern of access, including assigned matters, other unassigned matters, and matters that were never followed by any alleged trading. That comparison would show that the access the government describes as improper was routine. The request is limited to Mr. Nourafchan's own records during the relevant employment periods.

Request 6 seeks the firms' communications with investigators about the alleged conduct and the records they provided. Those communications are expected to show what the firms told the government the documents contained, how they identified access events, what types of access were permitted, and whether they placed any qualifications on the records they produced. The

request is limited to communications concerning the alleged conduct and the investigation.

**2) The Requests Are Specific and Directed to Identifiable Existing Evidence.**

The subpoenas are narrowly focused. They identify the three firms, the relevant transactions and time periods, and six specific categories of records.

Request 1 seeks the underlying documents already identified as having been accessed by Mr. Nourafchan. Request 2 seeks the access history for those same documents. Requests 3 and 4 seek the firms' existing policies, training materials, and instructions concerning the type of access the government claims was improper. Request 5 seeks only Mr. Nourafchan's own access history during defined periods. Request 6 is limited to communications concerning the alleged misconduct and the resulting investigation. There is every reason to believe these records exist. The firms maintained the document systems, employed Mr. Nourafchan, and already produced partial records during the investigation. The subpoenas therefore seek specific records from the entities most likely to have them.

**3) The Requested Records Have Clear Evidentiary Value.**

The Accessed Documents are relevant because they show what information was available to Mr. Nourafchan when he allegedly accessed it. The firms' training materials and instructions are relevant because they show what types of document review was permitted or encouraged. Those uses do not necessarily depend on the truth of statements within the documents. *See* Fed. R. Evid. 801(c).

The actual files and access logs are likewise likely to be admissible as business records. They may be authenticated through a records custodian, evidence about the firms' systems, or an appropriate certification under the Federal Rules of Evidence. The defense does not contend that

every responsive record will necessarily be admissible, but the requested records have clear evidentiary value and should be produced so any admissibility issues can be resolved before trial.

The firms' communications with the government may likewise be admissible for nonhearsay purposes, including to show what records were produced, how particular access events were identified, or what information the firms provided to investigators.

**4) Advance Production Is Necessary.**

The discovery reviewed by the defense does not include the exact versions of the documents Mr. Nourafchan allegedly accessed or complete access histories for those documents. File names and summary access records do not show what a document actually contained, who else accessed it, or why.

The defense needs these records before trial to compare the documents with the alleged tips, match access events to the charged transactions, and evaluate whether the access was improper. Doing that work for the first time during trial would interfere with effective preparation and could unnecessarily delay the proceedings. The defense therefore requests production sufficiently in advance of trial, subject to appropriate confidentiality protections and any specific privilege claims.

## IV. CONCLUSION

For these reasons, Mr. Nourafchan respectfully requests authorization to issue the subpoenas attached as Exhibits 1 through 3, an order directing production sufficiently in advance of trial to permit meaningful review, and authorization for defense counsel to inspect responsive,

nonprivileged materials.

Respectfully Submitted,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

**CERTIFICATE OF SERVICE**

I, Martin G. Weinberg, hereby certify that on this date, October 14, 2026, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg